UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DANNY BHATKA DINKER,** *et. al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. C-10-CV-315** |
| | § | |
| **NATIONWIDE MUTUAL INSURANCE** | § | |
| **CO.** *et. al*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendants Nationwide Mutual Insurance Co., Nationwide Mutual Fire Insurance Company, and Allied Insurance's (collectively "Defendants") Motion to Exclude Causation Testimony of Plaintiff[s'] Expert Gus Grajales (Dkt. No. 36), to which Plaintiffs Danny Bhakta Dinker, MJRB Properties, Inc. d/b/a/ Best Western Garden Inn, MLB Properties, Inc., Shisha Inc., Rest Well Corporation, and SBB Properties d/b/a Holiday Inn Express (collectively "Plaintiffs") have responded (Dkt. No. 39).

**I. Background**

Plaintiffs own and/or do business as the Holiday Inn Express in Falfurias, Texas (hereinafter "the Hotel"). Defendants are insurance carriers that provided coverage to the Hotel during the time at issue in this litigation. Plaintiffs allege that, on or about July 24, 2008, the Hotel sustained damage as a result of Hurricane Dolly and that they made a timely claim to Defendants for these damages. Defendants contend that they timely inspected the Hotel and offered to pay a good faith estimation of the damages; however, they refused to pay for damages not covered under the insurance policy or for damages to other properties that Plaintiffs

1

incorrectly attempted to combine into a single claim. Plaintiffs filed this action after Defendants refused to pay the entire amount of coverage sought.

Pursuant to the terms of the insurance policy on the Hotel, there is no coverage when interior water damage is caused by wind-driven rain, unless there is a storm-created opening in the roof or walls through which the water entered. Thus, a critical fact issue in this case is the cause of various damages to the Hotel, including whether or not the interior water damage was caused by wind-driven rain that entered through storm-created openings in the roof and/or walls of the Hotel.

Plaintiffs have designated as an expert witness Gus Grajales ("Grajales") of Arroyo Construction and Maintenance, who will testify about the cause of the damages, scope of required repairs, and cost to properly repair the Hotel. Although the title of Defendants' motion only references Mr. Grajales' causation testimony, they now move to strike Mr. Grajales' entire testimony on the grounds that he is unqualified to render opinions regarding causation, scope of repairs, and cost estimates, and his opinions are unreliable in various respects.

## II. Legal Standard

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). "This obligation pertains not only to scientific evidence but to 'all expert testimony.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580 (5th Cir. 2001) (quoting *Kumho Tire*, 526 U.S. at 147). As a threshold matter, the trial court must determine whether the proffered witness is qualified to give the expert opinion he seeks to express. *Kumho Tire*, 526 U.S. at 156; *Daubert*, 509 U.S. at 588 (1993). The trial court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

The Supreme Court has provided five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is scientifically reliable. These factors are (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire*, 526 U.S. at 150-51.

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge or observation." *Daubert*, 509 U.S. at 592. The Fifth Circuit has stated that when exercising discretion, "the district court may exclude expert testimony that lacks an adequate foundation." *Sales, Inc. v. E.I. du Pont de Nemours & Co.*, 24 F.3d 747, 752 (5th Cir. 1994). "[I]n determining the admissibility of expert testimony, the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). The party seeking to have the district court admit expert testimony must demonstrate by a preponderance of the evidence that the expert's findings and conclusions are

reliable, but need not show that the expert's findings and conclusions are correct. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

### III. Analysis

Defendants argue that Mr. Grajales' opinion regarding the cause, scope, and cost of damages Hurricane Dolly allegedly caused the Hotel must be excluded because: (1) Grajales is not qualified to so opine; (2) his opinions lack methodological reliability; (3) his opinions lack connective reliability; (4) his opinions lack foundational reliability; and (5) his opinions fails to pass the Rule 403 gate of admissibility.

#### A. Grajales' Qualifications

Defendants first complain that a cursory review of Grajales' resume indicates that he is unqualified to render any sort of technical or specialized opinion in this case, as he has neither the practical experience nor the formal training necessary to support his opinions.

Although Mr. Grajales has no college degree, the record shows that he has personal experience working in architectural construction, repair, and maintenance working for Arroyo Construction and Maintenance. He worked as a contract estimator and area manager for Paul Davis Restoration of South Texas for three years, where he conducted management of claims as well as cause-and-effect investigations. Mr. Grajales also performed causation and scope work for Allstate Insurance. Mr. Grajales served as a project manager of government job-order contracting and of civil, electrical, and mechanical construction projects for Centennial Contractors Enterprise for more than five years and currently works as an area project manager for governmental construction projects for Alpha Building Corporation, where he works with contractors; purchases building materials; oversees the construction of buildings for municipalities, schools, and other governmental entities; and prepares cost projections for projects. Mr. Grajales also has course certifications related to cleaning and structural water

damage restoration. Finally, Mr. Grajales has been a designated as an expert in a number of similar cases, including at least four cases in the Southern District of Texas, and he has never been stricken in any of these cases.

Based on the qualifications as set forth above, the Court finds that Plaintiffs have demonstrated that Mr. Grajales is qualified to give an expert opinion with regard to cause and scope of any damages to the Hotel, as well as the cost to repair these damages.

### B.  Methodological and Connective Reliability

Defendants next complain that Mr. Grajales applied no scientific methodology in reaching the conclusions in his report, and his methodology has not been tested or subjected to peer review. Mr. Grajales merely inspected the Hotel, observed alleged damage, referenced weather reports, then concluded that Hurricane Dolly caused damage to the Hotel and prepared a scope of repairs he claims were necessitated by the hurricane. Defendants argue that Mr. Grajales' expert report similarly lacks connective reliability in that it does not explain how Hurricane Dolly's sustained winds and wind gusts led to the damage he claims to have observed, including how he extrapolated from certain data to conclusions. According to Defendants, there is too great an analytical gap between the data and Mr. Grajales' unsupported opinion. Defendants further complain that the fact that Mr. Grajales has worked with Plaintiffs' counsel on 150 similar cases demonstrates that his "technique" was developed for purposes of litigation, further rendering his methodology unreliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316–17 (9th Cir. 1995) (*Daubert II*).

In response, Plaintiffs explain that Mr. Grajales' opinions in this case do not lend themselves to peer review or publication because they are specific and unique to Plaintiffs' Hotel. However, the underlying methods used by Mr. Grajales in arriving at his opinions have been generally accepted by the construction and insurance communities, and Mr. Grajales used

5

the exact same methodologies as Defendants' experts—*i.e.*, he inspected the Hotel, made cause-of-loss determinations, and made a damage estimate based on that information. Specifically, Mr. Grajales conducted visual and tactile inspections of the Hotel, interviewed Plaintiffs, created diagrams and photographic compilations of the Hotel, reviewed insurance adjusters' notes and claims information, and performed a weather analysis using data from the National Weather Service to determine the maximum sustained winds during Hurricane Dolly. Mr. Grajales then prepared a damage model with explanations for his field work, whereby he relied on his observations of wind-driven shingle uplifting, movement by packaged terminal air conditioning (PTAC) units, and window seal failure to determine that damage to the exterior of the Hotel was caused by windstorm, and not by building defect or normal wear and tear. Mr. Grajales further determined that rainwater entered the Hotel through these windstorm-created openings in the roof and walls, causing the interior water damage giving rise to part of Plaintiffs' insurance claims. Mr. Grajales also used the cost-estimating program PULSAR, which is similar to other cost-estimating software commonly used in the construction field.

Defendants do not explain how the methodology detailed above deviates from the methodology generally accepted by the insurance and construction communities, nor do they suggest any additional testing or analysis Mr. Grajales should have performed.

The Court finds that Mr. Grajales used well-accepted methods that meet minimum standards of reliability. The Court further notes that Defendants' objections concerning methodological and connective reliability go more to the weight that Mr. Grajales' testimony should be given than to his qualification as an expert. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Landi*, 80 F.3d at 1077.

6

### C. Foundational Reliability

Defendants further argue that Mr. Grajales' expert report lacks foundational reliability because he did not inspect the Hotel until the fall of 2010—more than two years after Hurricane Dolly—and did not complete the estimate until May 2012. Despite this passage of time, Mr. Grajales' report does not address whether the Falfurrias area experienced any other high wind events during those 27 months. Because Mr. Grajales does not rule out other wind events as the cause of the observed damage to the Hotel, Defendants argue his opinion must be excluded as mere speculation.

In response, Plaintiffs explain that neither party is able to know the exact condition of the Hotel before Hurricane Dolly hit, and apart from the insurance adjuster, Alejandra Cantu, Mr. Grajales was the only other individual to inspect the Hotel within the first two years after the hurricane. Defense experts Paul White and J. Daniel Boswley inspected the Hotel four years after Hurricane Dolly, and defense expert Matthew Oestrike did not physically inspect the Hotel at all. Plaintiffs further explain that Mr. Grajales reviewed photos Mr. Cantu took immediately following Hurricane Dolly, inspected the Hotel four times on his own, and took photographs during each visit to document changes, if any.

The Court is not persuaded by Defendants' objections regarding foundational reliability. The Court further finds that Defendants' objections concerning foundational reliability go more to the weight that Mr. Grajales' testimony should be given than to his qualification as an expert, and should therefore be left for the jury's consideration. *See 14.38 Acres of Landi*, 80 F.3d at 1077.

**D. Rule 403 Gate of Admissibility**

Finally, Defendants claim that Grajales' opinions do not pass the Rule 403 gate of admissibility because they rely on supposition instead of fact, are unreliable, and are not based on sufficient expertise. As such, his testimony would cause great prejudice in this case.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

As set forth in Parts III.A–III.C, *supra*, the Court finds that Mr. Grajales is qualified as an expert in the construction and estimating fields, and his opinions meet the minimum standards of reliability. The Court further finds that Mr. Grajales' opinions would not confuse or mislead the jury, but would instead assist the jury in determining the existence, cause, and scope of any damages to the Hotel, as well as the cost to repair these damages. There is therefore no danger of unfair prejudice in allowing this testimony. As such, Mr. Grajales' testimony is admissible under Rule 403.

**IV. Conclusion**

For the reasons set forth above, Defendants' Motion to Exclude Causation Testimony of Plaintiff[s'] Expert Gus Grajales (Dkt. No. 36) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 23rd day of December, 2013.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

9